## X. K. STOUT v. C. C. HYATT.

1. IMPANNELING JURY; *Discharging Juror.* It is not a substantial error for the district court to discharge a juror during the time the jury are being impanneled although the juror may be discharged for an insufficient reason, where an unexceptionable jury is afterward obtained, and where the party complaining has not exhausted his peremptory challenges.

2. TITLES TO LAND; *Legal and Equitable.* A party may have both a legal and an equitable title to a piece of land. He may in fact possess the whole title both legal and equitable, and be the entire owner of the property.

3. EJECTMENT; *Plaintiff's Title; Adverse Legal Title.* A party may in an action for the recovery of real property under ₰595 of the civil code recover on the strength of an equitable title only, even though the adverse party may hold the legal title, provided however that such equitable title is paramount to and stronger than the title held by such adverse party.

4. ———— Where the plaintiff seeks under said ₰595 of the code to recover real property on the strength of a paramount equitable title against a defendant who holds the legal title, the action is in the nature of an equitable action, and although such action is frequently called an action of ejectment, yet the final determination of the rights of the parties must be governed by the rules pertaining to equitable actions. That is, the plaintiff in such action must make out in every respect as complete a right to recover, and by the same kind of evidence, as though he had commenced his action in the form of an equitable action.

Stout v. Hyatt.

5. ———— *Pleadings and Evidence.* Although the facts in an action for the recovery of real property under said ¿595 of the code are not usually and need not necessarily be set out in the pleadings in detail, nor with any degree of particularity, still either party under such pleadings may prove whatever would strengthen his own title or defeat his adversary's title in the same manner and to the same extent as he could do if the facts were set out with all the circumstantial minuteness and fullness of detail that they usually are in equitable actions.

6. SCHOOL LANDS; *Sales under Territorial Laws.* Since the decision in the case of *The State v. Stringfellow,* (2 Kas., 263, 316, et seq.,) there can be no question concerning the power of the territorial authorities of Kansas to sell school lands during the time that Kansas was a territory, nor concerning the validity of the laws of the territorial legislature passed for that purpose.

7. ———— *Territorial Pre-emption Law.* Pre-emption rights could be assigned under ¿5 of the territorial pre-emption laws of 1855, (page 646,) and this assignment could be made by a simple instrument in writing. The assignment, where the land has not been paid for, was at most only the assignment of an equitable interest. No estate was conveyed, and of course it was not necessary to execute a deed of conveyance. Said instrument in writing may be and must be proved in the same manner as any other simple instrument in writing.

8. ———— *Proceedings of County Board.* The proceedings of the county board under ¿8 of the territorial pre-emption laws of 1855 are in the nature of judicial proceedings, and should be treated with about the same respect as the proceedings of other tribunals of special and limited jurisdiction.

9. ———— While the county board had the power under said pre-emption laws to determine whether any particular person had the right to pre-empt any particular piece of land, yet they had no power to determine whether any such person or any other person had at any time paid for said land. The payment was to be made to the school treasurer, and hence the records of the county board could not be evidence of such payment.

10. RECEIPT; *Evidence.* A receipt given by the school treasurer for money paid for school land under said pre-emption laws is *prima facie* evidence, and only *prima facie* evidence of the payment of said money.

11. EQUITABLE TITLE; *Purchases made bona fide.* A party purchasing a merely equitable title to land cannot be a *bona fide* purchaser of the land so as to defeat prior equities existing in favor of the person holding the legal title to the land.

12. PRE-EMPTION OF SCHOOL LANDS; *Forfeiture; Non-Payment.* Under the territorial laws of Kansas passed in 1855 for the pre-emption of school lands the pre-emption right would be forfeited if the land was not paid for before it was offered for sale. Under the school laws of said territory

of Kansas passed in 1857 the school treasurer had a right to loan the money received from the sale of school lands on good security to be approved by the county commissioners. Under these laws of 1855 and 1857 a piece of school land was sold and a promissory note taken in payment therefor, which note was secured and approved by the county commissioners. If at the time of the sale and the execution of said note it was understood by all the parties, the purchaser, the school treasurer, the county commissioners, and the makers of the note, that the land was paid for, and that said note was given for money loaned by the school treasurer to the parties executing the note, and all was done in good faith, a subsequent failure to pay said note would not work a forfeiture of the purchaser's right to said land. It was not absolutely necessary in a transaction like the foregoing that the money should pass from the purchaser to the school treasurer, and then from the school treasurer to the makers of the note, in order to make the transaction valid.

*Error from Doniphan District Court.*

EJECTMENT for 160 acres of school land, brought by *Hyatt* against *Stout.* *Hyatt* claimed as owner, under an alleged purchase made in 1857 by one Reuben Middleton under the territorial pre-emption law of 1855. *Stout* claimed as owner in fee, holding the legal title under a patent issued by the state in 1870. The principal question was, whether Middleton's purchase was complete and legal, and this turned upon the point whether he had in fact paid the purchase-money required by law to be paid. On the trial *Hyatt* gave in evidence a receipt dated October 13th, 1857, signed by the school treasurer reciting the payment by Middleton of said purchase-money. *Stout* claimed that instead of the payment being made, a note was executed by Middleton for the purchase-money with Joel P. Blair, one of the county board, as surety, and which note was approved by said Blair and E. V. B. Rogers, another of the board, by writing upon the back of the note on the 16th of March, 1857; and that in lieu of this note another was executed afterward, but dated the same, signed by Middleton and Bela M. Hughes. The notes were produced upon the trial. The second note had a writing upon the back, showing that the same was approved by the tribunal transacting county business. An indorsement on the back of the first note showed that it had been ex-

changed for the second note. No record is shown that the money realized from the sale had been loaned to these parties by the county board. The county treasurer testified that there was no evidence in his office that these notes or any part of either had been paid. Other facts are stated in the opinion, *infra*. Trial at the March Term 1873 of the district court. Verdict and judgment for the plaintiff. New trial refused, and *Stout* brings the case here on error.

*A. Perry,* and *X. K. Stout,* for plaintiff in error :

1. The court erred in sustaining the challenge for cause of Nixon, a juror. The civil code, § 270, provides as a ground of challenge, relationship to either party. *Kin* is a relationship by blood. In this case there was no relationship of Nixon by consanguinity or marriage with either party to the suit.

2. The court erred in refusing to exclude all testimony under the petition. The averments in the petition that the plaintiff had a legal and equitable estate in the land, were repugnant and contradictory averments. If he had the legal estate he did not have the equitable, and *vice versa.* Contradictory or inconsistent averments in a pleading destroy each other. (Gould's Pleading, ch. 3, §§ 272, 273.) Had these averments been made in separate counts the proper way to take advantage of the pleading would have been a motion to compel an election.

3. The plaintiff below seeks to recover upon an equitable title, and to enable him to recover he must show such a state of facts as would in a proper action compel a specific performance of the contract — compel the conveyance to him of the legal title. To do this he must show, that there have been no laches on his part; that his claim is not stale; that he has made payment of the purchase-money; that the preemption was without fraud, or that he was an innocent purchaser, and the execution of the contract is not a fraud upon the defendant or the public generally; and that the decree would produce no injustice.

The county board in taking proof of, and allowing a pre-emption under the law of 1855 were but ministerial officers, and the record might be disproved for fraud before the issue of the patent, and even after where the rights of innocent third persons had intervened: (2 Phillips' Ev., 591.) But if the record of the entry by Culbard cannot be disputed because it is a record, Culbard, by such record, had an equitable title to the land. On payment he could make conveyance. The evidence of his conveyance must be the same as in any other conveyance. If by deed, its acknowledgment carries the proof. If by simple contract, proof of execution must be made. This sale, entered upon the books of the county board, was not a proper subject of record there. It is an unauthorized record: 2 Phillips, 585.

4. No title, legal or equitable, vested in Hyatt, or Middleton, his grantor, because no payment had been made as required by §§ 6 and 7 of the statute of 1855. If all the proceedings before the county board were not a fraud, and the assignment by Culbard was in fact made, but without payment by Middleton or Hyatt, no right was conferred as against the government, and the disposing power over the lands was still in the state. (9 Wal., 195.) But the court here came to the rescue of the plaintiff, and instructed the jury that it did not matter whether there was any payment or not, that the receipt executed by the school treasurer was conclusive of payment. This was error. It was competent to contradict the receipt, as the same was only *prima facie* evidence of payment. 1 Kas., 240.

5. The notes given by Middleton were a nullity. They never had any validity, because executed for payment when payment should have been in money. It was but a loan of money; there had been no money paid, and there was no record produced of the approval of the security of these notes by the county board, as required by § 3, page 86, laws of 1857. Under the Gen. Stat. of 1868, ch. 94, § 16, these lands had become forfeit to the state.

6. Another question is presented in the instructions asked

for by the defendant below: Can the plaintiff below' maintain this action upon an *equitable* title against the defendant holding the *legal* title? It is true that the statute provides that it shall be sufficient to state that he has an equitable estate in the land. But can a party in all cases where he may be entitled to the possession of the land, maintain ejectment upon his equitable title? He does not hold the paramount title. (2 Kas., 316.) Stout must be held to be the trustee of Hyatt if Hyatt is entitled to the land. Fraud to be proven must be plead. If the plaintiff recovers there ought to be a lien declared upon the land for the purchase-money, and the proper party in whose favor the lien should be declared was not before the court.

*W. W. Guthrie,* and *N. B. Wood,* for defendant in error:

1. The court properly excused the juror, Nixon, on ground of "suspicion of partiality for defendant." Code, § 270, (last clause;) 3 Day, (Ct.) 491. But it is no error to release a juror when peremptory challenges have not been exhausted; 6 Kas., 104.

2. Plaintiff's petition was within § 595 of the code: "He may recover on a legal *or* equitable title." Then certainly the averment of *both* is good. But at the most defendant could only have moved to have petition made more certain.

3. This was not an action to enforce performance; but a case where the plaintiff stood upon a record title deduced under a statute authorizing the sale, and vesting in the county board full jurisdiction in the premises; and when the record showed full proof of purchase and payment, standing for ten years with the approval of the authorities, yearly exacting taxation therefrom. All pretense of fraud on the part of the plaintiff is idle talk. The law existed. This land was within sound of the court-house, and its claimant Culbard well known to the county board. Deed after deed is put on record, tax after tax is paid, and Stout knows and informs Wood that he has ten acres of the Middleton land inclosed with his. It was in fact paid for to the acceptance of the proper officials,

and the usual evidences executed.  But this matters not since the purchaser had the right to rely on the public records. The pre-emption-right vested "by settlement before the survey." Then the settler had the right to purchase, and to assign that right in any stage of its existence.  Nothing forfeited that right, but the neglect to make payments "before the same is offered for sale," and the evidence that such payment had been made, was "a receipt of the officer receiving the money, specifying the amount so paid, and the number and description of the land," and thereon *the title vested in the beneficiary of such receipt;* §§ 6 and 7, page 646, laws of 1855; 16 Mo., 582; 6 Wal., 418.

4. The decision of the county board on questions within its jurisdiction is *res adjudicata.* (7 Kas., 63, 169.)  The jurisdiction was exclusively in the county board; (laws of 1855, page 646, § 8.)  The county board act as judicial officers "in hearing and determining applications and proofs concerning rights of pre-emption under this act" of 1855; § 8 of said act; 9 Mo., 189, 807; 13 Pet., 517; 5 Mo., 356.  And the school treasurer's receipt was not a simple receipt subject to be contradicted by parol, but was evidence of title.  The decision of the county board that Middleton held the treasurer's receipt for payment, and had complied with the law and was entitled to receive the patent for said land, was final and conclusive, and could not be attacked collaterally.  Said record imparted notice of the title under such pre-emption. Under still another rule, "that as only a certificate could issue until payment made," the law will presume such payment to have been made, and this presumption is conclusive, at least in lands of subsequent purchasers. 2 Ohio St., 246; 4 Ohio St., 148; 12 Wheat, 70; 9 Cranch, 98.

5. The note of Middleton and Blair was accepted as a loan of such money in good faith and with the approval of the county board, and in payment for such land.  And if a misappropriation of the proceeds of such sale, it would not defeat the title of the purchaser. (*The State v. Stringfellow*, 2 Kas., 321; 13 Ohio, 332.)  Plaintiff might in such case be

liable for purchase-money, but his legal title would not be thereby affected. But with notice of the decision in *The State v. Stringfellow*, the legislature ratified *all* sales of school lands, and left the collection therefor to *other* remedies, and this before the act for sales of school lands took effect. (Laws of 1864, page 193; Dillon on Munic. Corp., § 46.) It then follows that at the time Stout purchased, the state nor county had no interest in this land, and he got nothing by his patent.

6.. In ejectment, the equitable title will prevail against the legal title. (*Butler v. Kaulback*, 8 Kas., 668.) But plaintiff was a purchaser from the holder of full evidence of title, and cannot be affected by any alleged defects not resulting from actual fraud. It must be conceded that on the record made, Hughes (plaintiff's grantor,) had a perfect title; then his deed conveyed such title to plaintiff; 12 Peters,. 11, 23; 12 Curtis, 614.

The opinion of the court was delivered by

VALENTINE, J.: This was an action for the recovery of real property; two trials were had; verdict and judgment for the plaintiff below, defendant in error. The land in dispute is a part of section 16, township 3, range 21, in Doniphan county, and was originally school land. The records of the board of county commissioners of said county show among other things the following facts, to-wit: On February 2d, 1857, the county board allowed H. Culbard to pre-empt said land, and to assign his pre-emption right to Asa K. Hubbard, and ordered a transcript of the record to be given to said Hubbard. On the same day the board appointed Ebenezer Blackstone a commissioner to secure the purchase-money for school lands. On July 17th, 1857, said board allowed said Hubbard to have entered on the records of the board an assignment of said pre-emption right from Hubbard to Reuben Middleton. On August 7th, 1857, said board appointed said Blackstone school treasurer for Doniphan county, and on the same day he duly qualified and took possession of the office. On July 15th, 1858, said Middleton made proof of his right

to pre-empt said land, and of payment therefor to said board, by presenting to them a receipt for the amount to be paid for said land, signed by said Blackstone, school treasurer, and the board then made the following entry, to-wit:

"It is therefore considered by the court, that the said Reuben Middleton has complied with the provisions of an act of the legislative assembly of the Territory of Kansas entitled 'An act to grant pre-emptions to school lands in certain cases,' and the instructions of the executive department in relation to the same, and that he is entitled to receive the patent for said land."

The receipt given by Blackstone to Middleton, and copied into the records of the board of county commissioners, reads, according to the evidence in the case, as follows:

"No. 16. Received Troy Oct. 13th, 1857, of Reuben Middleton the sum of two hundred dollars, it being the purchase-money for the following described quarter-section of school land, to-wit: The southwest quarter of section sixteen, township three, of range twenty-one, in the county of Doniphan, and Territory of Kansas.    EBENEZER BLACKSTONE,
School Treasurer for Doniphan Co., K. T."

Hubbard also executed a deed for said land to Middleton, February 16th, 1857. Middleton executed a deed for the land to Hughes, September 19th, 1858, and Hughes to Hyatt, the plaintiff below, May 13th, 1862. This constitutes the plaintiff's title. The defendant Stout holds under a patent issued by the state of Kansas to himself on August 31st, 1870. There are many other facts which we have not yet stated, but which we shall state as we proceed. The plaintiff in error, defendant below, claims that the court below committed many errors: for instance, that the court erred in impanneling a jury; that the court erred in holding that a party may have both a legal and an equitable title to land; that the court erred in allowing the plaintiff below to recover on the strength of an equitable title, as against the defendant who holds the legal title; that the court erred in admitting illegal evidence, and excluding legal evidence; that the court erred in giving improper instructions, and refusing to give proper ones, etc.; all of which we shall consider as we proceed. But as to many

of said supposed errors, all that we can do will be to decide the questions involved therein without entering into any discussion of said questions.

I. It is not a substantial error for the district court to discharge a juror during the time the jury are being impanneled, although the juror may be discharged for an insufficient reason, where an unexceptionable jury is afterward obtained, and where the party complaining has not exhausted his peremptory challenges.

II. A party may have both a legal and an equitable title to a piece of land. He may in fact possess the whole title, both legal and equitable, and be the entire owner of the property.

III. A party may in an action for the recovery of real property under § 595 of the civil code recover on the strength of an equitable title only, even though the adverse party may hold the legal title, provided however that such equitable title is paramount to and stronger than the title held by such adverse party.

IV. Where the plaintiff seeks under said § 595 of the code to recover real property on the strength of a paramount equitable title against a defendant who holds the legal title, the action is in the nature of an equitable action; and although such action is frequently called an action of ejectment, yet the final determination of the rights of the parties must be governed by the rules pertaining to equitable actions. That is, the plaintiff in such a case must make out in every respect as complete a right to recover, and by the same kind of evidence, as though he had commenced his action in the form of an equitable action.

V. Although the facts in an action for the recovery of real property under said § 595 of the code are not usually and need not necessarily be set out in the pleadings in detail, nor with any degree of particularity, still either party under such pleadings may prove whatever would strengthen his own title, or defeat his adversary's title, in the same manner and to the same extent as he could do if the facts were set out with

16—13 KAS.

all the circumstantial minuteness and fullness of detail that they usually are in equitable actions.

VI. Since the decision in the case of *The State v. String-fellow*, 2 Kas., 263, 316, we suppose there can be no question concerning the power of the territorial authorities of Kansas to sell school lands during the time that Kansas was a territory, or concerning the validity of the laws of the territorial legislature passed for that purpose.

VII. Pre-emption rights could be assigned under § 5 of the territorial pre-emption laws of 1855, (page 646,) and this assignment could be made by a simple instrument in writing. The assignment where the land had not been paid for was at most only the assignment of an equitable interest. No estate was conveyed, and of course it was not necessary to execute a deed of conveyance. Said instrument in writing may be and must be proved in the same manner as any other simple instrument in writing.

VIII. The proceedings of the county board under § 8 of the territorial pre-emption laws of 1855, (page 646,) are in the nature of judicial proceedings, and should be treated with about the same respect as the proceedings of other tribunals of special and limited jurisdiction.

IX. While the county board had the power under said pre-emption laws to determine whether any particular person had the right to pre-empt any particular piece of land, yet they had no power to determine whether any such person or any other person had at any time paid for said land. The payment was to be made to the school treasurer, and hence the records of the county board would not be evidence of such payment.

X. The receipt given by Blackstone, school treasurer, to Middleton, was regular upon its face, and was given by the proper officer. (See the following statutes in the following order, to-wit: Laws of 1855, page 646, § 6; Laws of 1857, page 86, § 3, (took effect Feb. 20th, 1857;) Laws of 1855, page 646, § 7.) And hence said receipt was *prima facie* evidence that said money therein mentioned was paid. But, as

we think, it was only *prima facie* evidence of that fact.  The
receipt was not intended as evidence of title, but only evidence
of payment.    Under the said pre-emption laws whenever
payment was made for the land the title thereto immediately
vested in the purchaser. (Laws of 1855, page 646, § 7.)    It
required no receipt, patent, or other instrument to vest this
title.    This title however was only an equitable title.    The
receipt for the money was then given for the money paid.
The purchaser then presented this receipt to the secretary of
the territory.    The patent for the land was then issued by
the governor and secretary, and the legal title to the land
passed from the territory to the purchaser.    The main object
in giving the receipt seems to have been to enable the pur-
chaser to obtain his patent.    In the present case the court
below held that said receipt, taken in connection with the
records of the board of county commissioners, was conclusive
evidence of said payment.    In this we think the court below
erred.    It is true said receipt would be conclusive as against
any person except the state (then territory,) or some person
holding under the state (or territory,) for no one except the
state (or territory) or some person holding thereunder would
have any right to said land or to the money.    But the
defendant below holds under the state, and holds precisely
the same rights to said land that the state held immediately
prior to his purchase.    He holds the legal title, with all the
equities that the state held prior to his purchase; and there-
fore he may dispute the supposed payment made by the said
Middleton to the same extent that the state might have done
if the state had continued to hold the legal title.    That
receipts in general are only *prima facie* evidence of payment,
we suppose will not be disputed.

XI. It is claimed that the plaintiff Hyatt is a *bona fide*
purchaser of said land, without any notice of a want of pay-
ment therefor, and that therefore said receipt cannot be dis-
puted.    Now, it may be that the plaintiff is a *bona fide*
purchaser in fact, as he claims; but we hardly think that
such can be so in law.    At the time the plaintiff purchased

said land no patent for the same had yet been issued. The legal title to the land was therefore still in the territory of Kansas, and was not in Hughes, the plaintiff's grantor. The plaintiff could therefore at most obtain only an equitable title from his grantor. And a party purchasing a merely equitable title must always take notice of all counter equities which may be outstanding in favor of the person holding the legal title. A party purchasing a merely equitable title cannot be a *bona fide* purchaser so as to defeat prior equities existing in favor of the person holding the legal title.

XII. It would seem from some of the evidence that the purchase-money for said land has never in fact been paid, but that a certain note was given therefor, and that the note has not yet been paid. Now, this may or may not avoid the plaintiff's title. If it is to be considered that the land has not been paid for at all, we should think that the plaintiff's title had been forfeited. (Laws of 1855, page 646, § 6.) But if it was understood by Middleton, the school treasurer, the county commissioners, and the parties who executed said note, that the land was paid for, and that said note was given for money loaned by the school treasurer to the persons who executed said note, and that all was done in good faith, then we should think that the plaintiff's title should be held good. Under the school laws as they existed at the time said receipt was given, the school treasurer had a right to loan said money on good security to be approved by the county commissioners. (Laws of 1857, page 86, § 3.) And if the money was to be paid in by the purchaser and loaned out to the borrower on the same day, it was not necessary that the money should actually pass into the hands of the treasurer. If all the parties considered that the purchaser's debt as such was extinguished, and that the borrower's debt was created, that was sufficient. If the borrower was satisfied to look to the purchaser for the money, that was sufficient. And then if the purchaser should pay the borrower and the borrower should never pay the note, it would not defeat the purchaser's title. It may be however that under the peculiar circumstances of this particular case

before the plaintiff should be allowed to recover (if he may recover) he should be compelled to pay to the defendant, (as a trustee holding the legal title for plaintiff's benefit,) what the payors of said note may now owe thereon, if in fact said note has never been paid, for, as we have before intimated, this is substantially an equity action. But as we have not all the facts before us we shall not comment on this matter further.

The judgment of the court below will be reversed, and cause remanded for further proceedings in accordance with this opinion.

All the Justices concurring.