## L. A. STALEY V. C. C. HOUSEL ET AL.

### [FILED JULY 1, 1892.]

1. **Ejectment:** GENERAL DENIAL: EVIDENCE ADMISSIBLE UN-
DER. Under a general denial, in an action of ejectment, the
defendant may show that a deed in plaintiff's chain of title was
procured by fraud and undue means.

2. ———: ———: ———. The defendant, under such an answer,
may prove, by any legal evidence which he may have, any fact
which will defeat the plaintiff's cause of action.

3. **Deeds:** FRAUD: EVIDENCE examined, and *held,* to sustain the
finding that the deed from J. B. P. to K. L. C. was procured
by fraud and undue means.

4. **The instructions** given and refused, *held,* properly given and
refused.

ERROR to the district court for Douglas county. Tried
below before WAKELEY, J.

*Estabrook, Irvine & Clapp,* for plaintiff in error:

Evidence of fraud or undue influence cannot be given
under the general issue in ejectment. (*A. & N. R. Co. v.
Washburn,* 5 Neb., 122; *B. & M. R. Co. v. Lancaster
Co.,* 7 Id., 37; *Peet v. O'Brien,* 5 Id., 360; *Jones v. Seward
Co.,* 10 Id., 161; *Ins. Co. v. Barnd,* 16 Id., 90; *C., B.
& Q. R. Co. v. Manning,* 23 Id., 552; *Allen v. Saunders,*
6 Id., 441; *B. & M. R. Co. v. Harris,* 8 Id., 142; *Hamil-
ton v. Ross,* 23 Id., 634; *Young v. Greenlee,* 82 N. Car.,
346; *Fish v. Benson,* 71 Cal., 428; *Lombard v. Cowham,*
34 Wis., 486; *Taylor v. Courtnay,* 19 Neb., 196; *Fair-
banks v. Long,* 91 Mo., 628.)

*Jno. L. Webster, contra:*

Granting that the defense made—that the deed from
Plummer to Christopher was obtainable by fraud—was an

equitable defense, still it was admissible under a general denial. (*Franklin v. Kelley*, 2 Neb., 80; *Armstrong v. Brownfield*, 32 Kan., 116; *Clayton v. Sch. Dist.*, 20 Id., 256; *Buzzell v. Gallagher*, 28 Wis., 678; *Catlin v. Bennatt*, 47 Tex., 165; *Ayers v. Duprey*, 27 Id., 604; *Johnson v. Byler*, 38 Id., 606; *Mayer v. Ramsey*, 46 Id., 371; *McCall v. Carpenter*, 18 How. [U. S.], 297; *Jackson v. Myers*, 11 Wend. [N. Y.], 533; *Wicks v. Smith*, 18 Kan., 508; *Stout v. Hyatt*, 13 Id., 242; *Mather v. Hutchison*, 25 Wis., 27; *Begg v. Begg*, 56 Id., 534; *Carter v. Scaggs*, 38 Mo., 302; *Brown v. Brown*, 45 Id., 412; *Meyers v. Gale*, Id., 416; *Williams v. Barnett*, 52 Tex., 130; *Warren v. Jacksonville*, 15 Ill., 236; *Stubblefield v. Borders*, 92 Id., 279; *Semple v. Cook*, 50 Cal., 29; *Willson v. Cleaveland*, 30 Id., 201; *Bell v. Bed Rock*, 36 Id., 219; *Kimball v. Gearhart*, 12 Id., 50; *Bell v. Brown*, 22 Id., 672; *Kent v. Agard*, 24 Wis., 378.) The jury was justified in finding that the deed was obtained by fraud and void. (*Burch v. Smith*, 15 Tex., 219; *Pickett v. Pipkin*, 64 Ala., 520; *Linn v. Wright*, 18 Tex., 337; Bigelow, Fraud, 2, 71, 190, 191; *Turner v. Turner*, 44 Mo., 535; *Todd v. Grove*, 33 Md., 188; *Bailey v. Litten*, 52 Ala., 282; *Mead v. Coombs*, 26 N. J. Eq., 173; *Bailey v. Woodbury*, 50 Vt., 166; *Leighton v. Orr*, 44 Ia., 679; *Moore v. Moore*, 56 Cal., 89; *Dean v. Negley*, 41 Pa. St., 312; *Coulson v. Allison*, 2 De G., F. & J., 521; *Hargreave v. Everhard*, 6 Ir. Ch. Rep., 278; *Farmer v. Farmer*, 1 H. L. Cas. [Eng.], 724; *Bayliss v. Williams*, 6 Cold. [Tenn.], 440.) The deed from Plummer to Christopher being without consideration and obtained by social influences, she and her grantee may be decreed to hold the property in trust and compelled to reconvey at the suit of the grantor or his heirs. (*Nichols v. McCarthy*, 53 Conn., 299; *Archer v. Hudson*, 7 Beav. [Eng.], 560; *Anderson v. Ellsworth*, 3 Giff. [Eng.], 154; *Munson v. Carter*, 19 Neb., 293.)

14

NORVAL, J.

This is an action in ejectment brought by plaintiff in error to recover the possession of lot 8 in block 352, in the city of Omaha, and damages for withholding said premises from plaintiff. The petition is in the ordinary form.

The defendants for answer deny that plaintiff is the legal owner of the lot or entitled to the possession of the same, or that defendants wrongfully withheld possession thereof; aver that defendants and their grantors have had adverse possession of the lot under a claim of title for more than ten years prior to the bringing of this action. The answer further alleges :

" Fourth—The defendants for further answer say that said plaintiff claims title, under and by virtue of a deed made and executed to him by one Kate Graham, formerly Kate Christopher, and that said Kate Christopher obtained her title by conveyance from one Jesse B. Plummer in the year 1868, and these defendants further say that said deed of conveyance from said Plummer to said Christopher was without any consideration and was obtained by said Kate Christopher from said Jesse B. Plummer by fraud and deception practiced upon him, the said Plummer, by her, the said Kate Christopher, and that said Kate Christopher was only to hold said title in trust for said Plummer, his assignees and devisees, and that said Kate Christopher was not to have, and did not claim to have, any legal title in or to said premises by virtue of said deed to her, and that the same was retained by her in fraud of the rights of said Plummer and of his assigns and devisees. That said Plummer in his lifetime made and executed a will by which he devised said real estate to one Valentine, and that said Valentine afterwards, by deed duly executed, conveyed her interest in said property to these defendants."

The answer also sets up that the conveyance from Graham to plaintiff was without consideration and was

made for the purpose of enabling him to bring this suit; that defendants have paid taxes on the lot in the sum of $2,000 and made lasting improvement thereon of the value of $2,000.

Each allegation of the answer is denied by the reply filed by plaintiff.

From a verdict and judgment in favor of defendants plaintiff prosecutes error.

The evidence discloses that on and for several years prior to the 10th day of February, 1868, the lot in litigation was owned by one Jesse B. Plummer, he having purchased the same at a sale under a decree of foreclosure as the property of one C. J. Christopher, the former husband of Kate L. Christopher and the immediate grantor of plaintiff. Prior to the sale Christopher disappeared and is supposed to be dead. At the time Plummer bid in the property, Kate Christopher was residing thereon and for many years afterwards she and Plummer lived together upon the premises, occupying the same house. On February 10, 1868, said Jesse B. Plummer conveyed the property in dispute by deed of general warranty to said Kate L. Christopher, reserving to the grantor a life estate, which deed was duly recorded on the same day. On November 3, 1869, said Kate L. Christopher married one George Graham. Soon thereafter they left Omaha, leaving Plummer in possession of the premises, and have not since resided there. The lot was conveyed by deed of quitclaim on the 17th day of May, 1884, by said Kate L. Graham to the plaintiff Lorin A. Staley, which deed was filed for record June 6, 1884.

It further appears from the record that Plummer died in 1887, leaving a last will and testament, bearing date the 20th day of February, 1873, by which all his property, real as well as personal, was devised to his daughter, Ellen Olivia Valentine, which will has been duly admitted to probate. It is contended by defendants that the convey-

ance from Plummer to Kate L. Christopher was without
consideration, and that the same was procured by fraud and
undue influence, therefore the lot, upon the death of Plum-
mer, passed under the will to his said daughter. The de-
fendants, for the purpose of establishing title to the lot in
themselves, introduced in evidence a deed to said lot from
said Ellen O. Valentine and her husband, Joseph T. Val-
entine, to the defendants Charles C. Housel and Reuben
Allen, bearing date December 8, 1883; a deed from said
Reuben Allen and wife to the defendant Everett G. Ballou,
dated March 31, 1884, for an undivided one-third of the
lot; also two tax deeds from the treasurer of Douglas
county to the defendant Housel, and also a deed from the
treasurer of Douglas county to the defendants Housel and
Allen.

The defense of adverse possession is not sustained by the
proofs; in fact it is not relied upon in this court, nor was
that issue submitted to the jury in the court below. The
tax deeds above referred to were void on their face and were
therefore insufficient to establish title in the defendants.
Nothing is now claimed by counsel for defendants for these
treasurers' deeds, and they will not be further considered.
It will be observed that plaintiff has shown a complete
chain of title to the premises in himself, and therefore was
entitled to recover, unless the deed from Plummer to
plaintiff's grantor, Kate L. Christopher, was obtained by
fraud or undue influence. Whether it was thus procured
is one of the principal questions presented by the record.
Before entering upon this investigation we will pause to
consider whether the evidence produced by the defendants
to show fraud was admissible under the issues raised by
the pleadings. An objection to its introduction was made
on the trial by the plaintiff, which was overruled by the
court. The evidence was not admissible under the fourth
paragraph of the answer, which we have copied above.
The allegation therein of fraud is a mere conclusion. No

fact constituting the fraud is averred. A party charging fraud and undue influence must plead the facts. A mere allegation of their existence is not sufficient. (*Arnold v. Baker*, 6 Neb., 134; *Clark v. Dayton*, Id., 192; *Aultman v. Steinan*, 8 Id., 113.)

The evidence tending to show that the deed from Plummer to Christopher was obtained by fraud and undue influence was, however, admissible under the general denial of the answer. The question was squarely presented and decided in *Franklin v. Kelley*, 2 Neb., 79. It was there held that the defendant, in an action of ejectment, may show that a deed in plaintiff's chain of title was procured by fraud, without specially pleading the fraud in the answer. Chief Justice MASON, in delivering the opinion of the court, says:

"In whatever aspect the offer of the defendants is regarded, it is within the rule that fraud may be shown in ejectment to avoid a deed; and the refusal of the court to hear the evidence was error. One other matter only remains to be noticed. It is insisted that this matter should have been specially pleaded. It is undoubtedly true, that the theory of the system of pleading under the Code generally is, that the facts necessary to constitute a cause of action or defense shall be stated. But, in respect of actions for the recovery of real property, another rule has been adopted. Why this is so is not very clear. It may be because, as two trials, of course, are given in that class of actions, the parties are supposed to learn, from what is shown on the first, what will be the issue on the final trial. But, whatever the reason, it is apparent that in this class of actions, as also in cases of replevin, the facts need not be stated. That being the rule of pleading contained in the Code, we have only to enforce it here."

The decision has never been directly overruled, nor its soundness questioned, but the same principle was recognized and applied by this court in *Dale v. Hunneman*, 12

Neb., 221. That was an action of ejectment, the answer being a general denial. MAXWELL, Ch. J., in the opinion says: "Where the facts stated in the petition are denied, the plaintiff, to be entitled to recover, must prove that he possesses a legal estate in the premises, and is entitled to the possession of the same. If the defendant possesses an equity which negatives the plaintiff's right of possession, such equity may be proved under a general denial, as it is a mere defense to the action. But if the defendant seek affirmative relief, such as to enforce a contract which does not give him the right of possession, but does give him a right to demand a specific execution of the contract by the plaintiff, upon which the right to continue in possession of the premises depends, he must plead the facts entitling him to such relief. And his answer must contain all the facts necessary to entitle him to such relief."

Numerous cases are cited by defendants' counsel from the courts of other states which sustain the position for which they contend, among others, *Stout v. Hyatt*, 13 Kan., 242; *Clayton v. School District*, 20 Id., 256; *Wicks v. Smith*, 18 Id., 508; *Armstrong v. Brownfield*, 32 Id., 116; *Jones v. Cohen*, 82 N. Car., 75; *Lain v. Shepardson*, 23 Wis., 224; *Mather v. Hutchinson*, 25 Id., 27; *Williams v. Barnett*, 52 Tex., 130; and *Sparrow v. Rhoades*, 76 Cal., 208.

The case of *Mathers v. Hutchinson, supra,* is quite in point. The action was to recover real estate, the answer being a general denial. The defendant offered testimony tending to prove that a certain tax deed, under which the plaintiff claimed title, was procured by fraud. The evidence was objected to upon the ground that the facts constituting the fraud were not pleaded in the answer. The court in passing upon the question says: "The complaint was in the ordinary form, and did not disclose the origin of the plaintiff's title. And we have held that in such an action, under such a complaint, the defendant, under the general denial, must be allowed to prove anything which

would defeat the title offered by the plaintiff.  Any other rule would place him at a great disadvantage.  The plaintiff, not being bound to disclose the title relied on in his complaint, may, at the trial, offer any evidence of title which he pleases.  With such a rule as to the plaintiff, it would be manifestly unjust to exclude the defendant from proving that the title offered by the plaintiff was void for fraud or any other reason, because he had not specifically set forth the facts in his answer.  It would require him to foreknow and avoid, by specific allegations, a title which the plaintiff was not bound to disclose at all."

After a careful examination of the authorities we are satisfied that the rule is correctly stated in *Franklin v. Kelley* and should be adhered to.  The general rules of pleading do not apply to actions like this.  The plaintiff is not required to disclose in his petition the origin of his title, nor the facts upon which he relies for a recovery.  It is sufficient to aver that he has a legal estate in, and is entitled to, the possession of the property in controversy, and that the defendant unlawfully withholds possession.  (Code, sec. 626.)  The statute has also provided that in an action of ejectment it is sufficient for the defendant to deny generally the title averred in the petition. (Code, sec. 627.)  Under such an answer he may prove any fact tending to show that the plaintiff has not the title or the right of possession to the land in controversy.  If the defendant in ejectment desires affirmative relief, he must set up in the answer the facts entitling him thereto.  The rule for which plaintiff contends would place the defendant at a disadvantage, as it would oblige him to anticipate the nature of plaintiff's evidence, and allege specifically in his answer a defense to a deed which plaintiff might introduce under his general allegation of title.  Such a rule would be not only unjust but contrary to the meaning of the section of Code to which reference has been made.

The case of *Uppfalt v. Nelson*, 18 Neb., 533, is cited by

plaintiff, claiming that it, in effect, overrules *Franklin v. Kelley, supra,* upon the question under consideration. What the equities of the defendant in the case cited were, and whether he was seeking affirmative relief without having pleaded the facts in his answer, we are not advised, as the published opinion does not disclose, nor has the writer the record at hand so he can determine the same. If the defendant therein was in the position of seeking affirmative equitable relief, then the decision accords with the views we have expressed above, and is in harmony with the second Nebraska case. There is language used in the opinion of *Uppfalt v. Nelson,* from which the inference could be drawn that any equitable matter relied upon by defendant in an action of ejectment to defeat the title set up by the plaintiff, or his right to possession, to be available must be pleaded in the answer, which is contrary to the principle decided in *Franklin v. Kelley,* and *Dale v. Hunneman.* In so far as there is an apparent or real conflict in the opinions referred to, the two reported in the second and twelfth volumes of our reports, we are of the opinion, upon reason as well as authority, should be adhered to.

Was the jury warranted in finding that the deed from Plummer to Kate Christopher was without consideration and obtained by fraud and undue influence? The evidence clearly shows that at the time the conveyance was executed Plummer was a drinking man, about sixty years of age, feeble physically, irritable in temperament, childish, and at times acted like a person unbalanced mentally. For some time prior to and on the day of the making of the deed Kate Christopher had been living with him in the house on the lot in litigation. The house had three rooms, contained but one bed; Kate Christopher was thirty or thirty-five years of age, strong, vigorous, and intelligent, in appearance handsome and attractive, possessed of no money or property. Plummer was completely under her influence and control. After the making of the deed

Staley v. Housel.

she left him and married one Graham. It appears from
the testimony of Byron Reed, the officer before whom the
acknowledgment was taken, that she paid no money to
Plummer when the deed was executed.

Mrs. Johanna Knight testified that she was acquainted
with Kate Christopher while she lived with Plummer;
that after the death of the latter she called to see witness
and they had a conversation in regard to the deed. We
quote from the bill of exceptions:

Q. What did she say, if anything, about getting the
property?

A. She introduced herself to me as "Mrs. Graham." I
said, "I thought you was Mr. Plummer's wife." "No," she
said, "I never was married to him; I wasn't his wife." I
said to her, "I understood he signed his lot away to you,
or you got it away some way from him." She said, "Yes,
he signed it to me," she says, "he signed it to me for me
to take care of him." "Well," I says, "why didn't you
stay with him and take care of him? He died a pauper,
and had nothing to take care of himself with." She says,
"I couldn't live there with him because he was jealous of
me. There was no living with him."

Q. What further was said, if anything, about this deed?
Let me ask you if anything was said about the heirs set-
ting aside this deed or trouble that would come from it?

A. I said to her, "What do you intend to do with this
property?" She says: "I will sell it if I can." I says
to her, "Then I wouldn't touch it. I wouldn't touch
heirs' property." Because Mr. Plummer told me he had
a daughter, and I says, "Some day, if she is a smart
woman, she will come and tear your title all to pieces,
because you did not perform your duty to Plummer. We
saw him starving and suffering." She said, "She didn't
care," and that was her reply.

Q. What was said, if anything, by her about Plummer
signing this deed when he didn't know what he was doing?

A. I said, "It is whispered among the neighbors he deeded this to you when he was delirious from fever." She said, "Of course the doctor was sick, but I don't know but what he had his senses."

Q. Was anything said between you about what Plummer had said about her ceasing to stay with him after he made the deed?

A. I said, "When you persuaded that childish old man"—I was in there after taking care of him, because he was suffering from starvation—I said, "what agreement did you make?" She said, "I was to stay with him while he lived, if he secured me, or gave me this property—this lot, so I would have something for my labor." "Now," I said, "Kate"—I was disgusted with her, any way—I said, "you didn't perform your duty. You promised that poor, childish old man that you would stay with him and be his friend, and he died a pauper, dependent on his Omaha friends, in Omaha city." She didn't say one word.

On cross-examination she further testified that Kate Christopher informed her that during the conversation mentioned, Plummer was in bed at the time he signed the deed, but she did not know whether he was delirious or not; that Plummer also told witness on one occasion that "if he ever signed the deed, it was when he did not have his senses."

The testimony of this witness is in no manner contradicted. The record fully discloses that Plummer was completely under the control of Kate Christopher. The testimony, although largely circumstantial in its nature, was ample to justify the jury in concluding that Plummer sustained illicit sexual relations with this woman while they were living together, and that by means of such unlawful cohabitation the weak-minded old man yielded to her demands and was induced to execute the deed without receiving lawful consideration therefor. The entire transaction was so unconscionable that a court of equity will

not uphold it. (*Gibson v. Jeyes*, 6 Ves. [Eng.], 226; *Shipman v. Furniss*, 69 Ala., 555; *Leighton v. Orr*, 44 Ia., 679; *Hanna v. Wilcox*, 53 Ia., 547; *Bivins v. Jarnigan*, 3 Baxt. [Tenn.], 282; Cooley on Torts, 515.)

The defendant Housel had used 4,000 or 5,000 loads of dirt to level the lot; he repaired the house at an expense of $550, erected fences, moved two houses on the lot, yet Kate Christopher, although aware that these improvements were being made, did not object to the same, thus indicating that she placed but little, if any, reliance in her title.    The equities are with the defendants.

Exception was taken to the giving of the first instruction requested by the defendants, which was in this language: "The jury are instructed that the question of determining whether the deed from Plummer to Kate Christopher was obtained by fraud or undue influence is a question peculiarly within the province of the jury to decide from all the evidence, and in determining this question the jury must take into consideration the relationship existing between Plummer and Kate Christopher at and before the time of the making of the deed, the ages of the respective parties, the amount of the consideration, if any, having been paid for the deed, the understanding of the parties as to the condition upon which the deed should be made, if there was any understanding, and all the other circumstances surrounding the transaction."

It is conceded by plaintiff's counsel that the instruction is correct as an abstract proposition of law, but it is claimed that the same was not based upon the testimony, and, therefore, was erroneous.    We do not think the criticism merited.    There was before the jury testimony tending to prove every matter embraced in the charge of the court. The instruction was pertinent and proper.

The court refused to give the plaintiff's fifth request, which was to the effect that the want of consideration for the conveyance, or the fact that the consideration was ille-

gal and against public policy, was immaterial; that, although
the defendants established such want of consideration, or
the illegality of consideration, it would not entitle them to
a verdict.    While it is true that neither the want of a valid
consideration for the deed, nor the fact that it was executed
upon an illegal or immoral consideration, would not, of it-
self, avoid the deed, it does not follow that the proof of
such facts was immaterial and should have been disre-
garded by the jury.    They were proper matters to be con-
sidered, in connection with the other facts and circumstances
appearing in evidence, in determining whether the deed
was obtained by undue means.    The jury were told in the
tenth and eleventh paragraphs of the court's charge that
the want of a consideration for the conveyance, or the fact
that it was executed to induce the grantee to continue
illicit relations with Plummer, would not be sufficient
grounds for setting aside the deed.    The charge was as
favorable to the plaintiff as he had a right to expect, and
no error was committed in refusing to instruct as prayed
by the fifth request.

Plaintiff's thirteenth and fourteenth instructions were
properly refused.    They were upon the subject of the rat-
ification of the deed by Plummer.    They were erroneous
in failing to state that the acquiescence of Plummer in the
conveyance, to be binding upon him or those claiming
through him, must have been with full knowledge of all
the facts affecting the validity of the deed.    This element
was entirely omitted from the instructions.

Complaint is made because the court refused the follow-
ing instruction:

"15. If you find that the deed from Plummer to Chris-
topher was procured by fraud or undue influence, but fur-
ther find that plaintiff paid a valuable consideration for the
same, and took said deed without notice of the fraud, your
verdict should be for the plaintiff."

We are not surprised at the refusal of the court to so

instruct, as there are no facts upon which the request could be predicated. Plaintiff is not in the attitude of a good faith purchaser for value without notice. He claims under a quitclaim deed, and there is nothing to show that he ever paid a dollar therefor, except the presumption arising from the amount expressed in the deed, which sum did not exceed one-tenth the real value of the lot at the time of the transfer. Housel was in possession of the premises, therefore plaintiff took his deed with notice of the rights of Housel. Every phase of the case was fairly submitted to the jury. The judgment is

AFFIRMED.

THE other judges concur.