OMAHA & REPUBLICAN VALLEY RAILROAD COMPANY
v. MARY COOK.

FILED JUNE 30, 1893.   No. 5101.

1. Jury: CHALLENGE: QUALIFICATIONS. In a personal damage case against a railway a juror stated in his examination on his *voir dire*, in substance, that he had an elevator on the line of railway and was engaged in the business of buying and shipping grain over the railroad; that he had received favors from the

railway company and desired to retain the favorable consideration of the company; that he had no personal feeling in the matter and could render a fair and impartial verdict. *Held*, That a challenge for cause was properly sustained; that a fair trial can only be had where the jurors are absolutely free, impartial, and independent.

2. ———: ———: ———: EXAMINATION: REVIEW. Where the examination of a juror raises a doubt as to his being an elector of the county where the action is brought, there is no error in sustaining a challenge for cause.

3. ———: ———: ———: ———: DISCRETION OF TRIAL COURT. Even where by his formal answers the juror brings himself within the letter of the statutory qualification, if the court should discover the least symptom of unfairness or prejudice he should be rejected. So that a fair and impartial jury is secured, error cannot be predicated on the rejection of persons who may have been qualified. Some discretion must be allowed to the trial court in the selection of jurors.

4. Railroad Companies: NEGLIGENCE: PERSONAL INJURIES: EVIDENCE: TRIAL. Evidence, being conflicting, was properly submitted to the jury.

ERROR from the district court of Howard county. Tried below before HARRISON, J.

The facts are stated in the opinion.

*J. M. Thurston, W. R. Kelly*, and *E. P. Smith*, for plaintiff in error:

The court erred in sustaining the challenge for cause made by plaintiff below to the juryman Salter. He was examined by counsel and the court. The evidence disclosed no circumstance from which a suspicion of bias in the mind of the juror for or against either party could arise. The juror declares that he has no feeling favoring the railroad company as a suitor in the case, and that his verdict would nor could in no way be affected by his business relations. The ruling of the court disregards the law that in the absence of any evidence to the contrary the

juror must be presumed competent, and that the court has
no right to disregard undisputed evidence.    Mere friendli-
ness for the company is not ground for suspicion of bias.
(*Engmann v. Immel,* 59 Wis., 252; *Burlington & M. R.
R. Co. v. Westover,* 4 Neb., 273; Code, sec. 669*l*; *Hart v.
State,* 14 Neb., 572; *Ensign v. Harney,* 15 Id., 331;
*People v. McQuade,* 110 N. Y., 284; *Burlington & M. R.
R. Co. v. Beebee,* 14 Neb., 464; *Heuke v. Milwaukee C. R.
Co.,* 69 Wis., 401; *Strawn v. Cogswell,* 28 Ill., 457;
*Hutchison v. State,* 19 Neb., 262; *Commonwealth v. Web-
ster,* 5 Cush. [Mass.], 295.)    The challenge to the juror
Spangler should not have been sustained.    He had heard
from some one what purported to be the facts in the case,
but formed or expressed no opinion as to the rights of the
parties and was under no obligation to the company.
(*Reynolds v. United States,* 98 U. S., 155.)    The mere fact
of past business relations with the company is not sufficient
cause for sustaining a challenge to a juror. (*Central R. Co.
v. Mitchell,* 63 Ga., 173.)    The challenge to the juror
Jackson should not have been sustained on the ground that
he was not a resident of Howard county.    It appeared
that he had been a resident of that county for six months,
and testified that he came with the intention of making it
his home.    The place where a person lives is taken to be
his domicile until facts adduced establish the contrary, and
when once acquired the domicile is presumed to continue
until it is shown to be changed. (*Case v. Clarke,* 5 Mason
[U. S.], 70; *Ennis v. Smith,* 14 How. [U. S.], 400; *Mor-
ris v. Gilmer,* 129 U. S., 328; *Sears v. City of Boston,* 1
Met. [Mass.], 250; Wharton, Conflict of Law, sec. 43;
Story, Conflict of Law, sec. 46; *Anderson v. Watt,* 138 U.
S., 694; *Burlen v. Shannon,* 115 Mass., 438; *Cheely v.
Clayton,* 110 U. S., 705.)    The challenge to the juror
Salter was overruled.    The jury was impaneled and
sworn.    After the commencement of the trial, without any
further evidence or reason, the court, of its own motion,

excused Salter from the jury and sustained the challenge. There was no evidence showing his incompetency. No fact was shown which rendered it probable that the verdict would be set aside if he were retained upon the jury. The ruling sustaining the challenge was erroneous. (*Thorp v. Deming*, 43 N. W. Rep. [Mich.], 1097; *Rex v. Edwards*, 4 Taunt. [Eng.], 309; *Stewart v. State*, 15 O. St., 155; *Stone v. People*, 2 Scam. [Ill.], 326; Thomp. & M., Juries, sec. 273; *Hildreth v. City of Troy*, 4 N. E. Rep. [N. Y.], 559; *Black v. State*, 9 Tex. App., 328.)

*A. A. Kendall, contra,* cited: *Ensign v. Harney,* 15 Neb., 330; *Marion v. State,* 20 Id., 238; *Collins v. People,* 103 Ill., 23; *Holt v. State,* 9 Tex. App., 571; *State v. Jones,* 97 N. Car., 469; 12 Am. & Eng. Encyl. Law, p. 366.

MAXWELL, CH. J.

The amended petition of the plaintiff below, after stating the corporate existence of the defendant company and the operation of its road running northwesterly through the counties of Hall, Howard, Greeley, and Valley to Ord, Nebraska, avers, in substance, that on the 8th day of September, 1884, the plaintiff, being then a child of the age of thirteen years, while walking upon the track of the said railroad company, in the county of Greeley, in said state, was run into and against and violently struck and thrown from the track of the said railroad company by a locomotive attached to a passenger train then in use upon the said track of the said railroad company; that by reason of being struck and thrown from said track by the said locomotive, this plaintiff was frightfully mangled and permanently injured; that this plaintiff's right leg and hip were broken, and the plaintiff's left foot was terribly mangled and crushed and bruised, and the flesh torn therefrom, and the heel severed from the said foot, and the use of said foot

was thereby permanently injured and destroyed, and plaintiff has suffered, and still suffers, greatly with bodily pain by reason of said injury, and that the injury to the said foot was so great that said foot has never been healed up and still remains an open sore; that said foot is of an ill-shape in consequence thereof, and plaintiff is unable to wear a shoe upon it owing to its ill-shape and its unhealed condition; that plaintiff, in consequence, is unable to stand or walk upon said foot, and is unable to work and maintain herself in any way, and has, in consequence of said injury, become a helpless cripple for life.

The petition further alleges that plaintiff was struck and run against by said locomotive through the gross neglect and carelessness of the said Omaha & Republican Valley Railroad Company, said neglect and carelessness being in not providing its locomotive and cars thereto attached with the latest improved and best appliances for the operating, controlling and stopping of said locomotive and train of cars; and through the gross negligence and carelessness of its agents, employes, and servants in charge of the said train, and not through any act of carelessness on the part of this plaintiff.

It also avers that said locomotive and train of cars attached thereto were not supplied with air brakes, they being the latest improved and best appliances then in use upon all carefully equipped trains for speedily controlling and stopping them; that said locomotive and cars thereto attached were running off from the schedule time stated by said railroad company, a fact at that time unknown to plaintiff; that they were running at a greater rate of speed than allowed by the rules of said company, to-wit, at a rate of forty miles an hour; that the defendant's operators, agents, and servants in charge of said train of cars, carelesssly neglected to sound the whistle and ring the bell of the said locomotive to apprise the plaintiff of its approach although they were able to see the plaintiff more than

seventy rods in front of the said locomotive and train, and they carelessly and negligently failed to slacken or stop the said locomotive and train of cars, although the said agents, servants, operators, and engineer in charge thereof had ample opportunity to stop said train of cars before injuring the plaintiff, had said train of cars been properly supplied with air brakes and had said operators, agents, servants and engineer applied all means within their power to stop said locomotive and train after discovering the perilous situation of the plaintiff.

And the petition alleges that by reason of the carelessness and negligence of the said Omaha & Republican Valley Railroad Company as above set forth, and the gross negligence of its agents, employes, operators, and engineer, as above set' forth, and the injury sustained by this plaintiff in consequence thereof, this plaintiff has been damaged and injured in the sum of $25,000, no part of which has been paid by the said Omaha & Republican Valley Railroad Company, nor by any other person or corporation.

Wherefore, plaintiff prays judgment against it for the sum of $25,000, with in'erest thereon from the 8th day of September, 1884, and for the cost of this action.

To this petition the railway company filed an answer:

" The above named defendant, for answer to the plaintiff's amended petition herein, admits all and singular the allegations contained in the first paragraph of said petition, and that it is successor to the Omaha & Republican Valley Railroad Company as averred in said petition.

" Defendant admits and alleges that on the 8th day of September, 1884, while plaintiff was walking on the track on defendant's ground in the county and state therein stated, she was run against and struck by defendant's locomotive attached to one of its passenger trains and thrown from the track, but alleges that the same was unavoidable by defendant, its agents or employes, and without fault of defendant, its agents or employes.

"Defendant avers that the said plaintiff, at the time aforesaid was, wholly without authority or license, walking without any precaution between the rails of the defendant's track, and was a trespasser thereon.

"Defendant has no knowledge or information, except from the statements of the plaintiff's petition and statements given above on the part of the defendant in the trial of the said action, as to the plaintiff's age at the time of the accident, and leaves the plaintiff to make her proofs as she may be advised are material.

"Further answering, defendant admits that the plaintiff was injured at the time aforesaid at the time of said collision, but as to the extent of said injuries the defendant has no knowledge or information except from averments of the said petition and the testimony given on the part of the defendant on said trial; and it leaves the plaintiff to make her proof thereof as she may be advised is material.

"The defendant alleges that whatever injuries, if any, which the plaintiff so then and there sustained at the time of said collision, the said injuries were by said plaintiff received and sustained by and through her own fault, carelessness, and negligence contributing thereto, and in no respect by or through any fault, wrong, or negligence of the said defendant, its employes, agents, servants, operators, or engineers.

"The defendant denies each and every other allegation of the said petition not herein answered or denied."

On the trial of the cause the jury made special findings and returned a general verdict as follows:

"You will, in addition to your general verdict return answers to each of the following questions:

Q. Was the plaintiff at the time of the injury of the age of thirteen and a half years?

A. Yes.

Q. Was she then apparently a girl of ordinary discretion?

A. Yes.

Q. Was she then at that time deaf to any considerable extent?

A. No.

Q. Had she just before the happening of the accident left her brother's house to return to her father?

A. Yes.

Q. If you answer the last question in the affirmative, then did she voluntarily and for her own convenience go upon the defendant's premises and right of way?

A. Yes.

Q. Was the plaintiff then and there trespassing upon the defendant's premises; that is, was she there without right or authority?

A. Yes.

Q. Was she at the same time walking in the same direction the train was going?

A. Yes.

Q. Was she then between the rails or outside of them?

A. Yes, between the rails.

Q. Did she step from the outside of the rails into the space between them after the engineer saw her?

A. No.

Q. Was she walking beween the rails when the engine struck her?

A. Yes, in the act of jumping.

Q. Was the engine whistle sounded more than once before she was struck?

A. No.

Q. Did the engineer cause the whistle to be sounded as the train approached the plaintiff.

A. Yes.

Q. Did the trainmen in response to the danger whistle promptly apply the brakes on the train and use such appliances as they had thereon to stop the train?

A. Yes.

Q. Could the defendant's agents, by the appliances then at their command, after it became apparent that plaintiff was walking between the rails, unaware of the coming of the train, have stopped the train before it reached her ?

A. Yes.

Q. Did the plaintiff, after she went upon defendant's premises, either look or listen to satisfy herself whether or no any train was approaching?

A. No."

The jury also returned a general verdict for $11,500, upon which judgment was rendered.

The first error relied upon for a reversal is the exclusion of Mr. Salter from serving on the jury. His examination on his *voir dire* is as follows:

Q. You have no feeling in a case of this sort in favor of or against either party to the suit, have you?

A. Well, it is certainly to my interests to keep in favor of the railroad company, for I am an extensive shipper of grain.

Q. And you are also interested in buying the grain from the farmer ?

A. Yes, sir.

Q. Taking into consideration all your circumstances are you in such a position that you could fairly and impartially render a verdict in this case without any feeling or prejudice in one way or the other.

A. Yes, sir.

Q. Mr. Salter, if you are conscious of anything that would prevent you from sitting fairly and impartially on this case, you may state it.

A. Well, I have received considerable favors from the railroad.

Q. Have you from any one else?

A. No, sir.

Q. Would these favors in any way affect your verdict ?

A. No, I think not. At the same time I would prefer to be relieved from service in this case.

Q. I presume so. But your situation is such that you could, so far as you know, fairly and impartially render a verdict in this case?

A. Yes, sir.

Further examination by Mr. Kendall:

Q. I believe you stated that you had received some favors from the railroad company?

A. Yes, sir.

Q. And by reason of receiving these favors you feel somewhat under obligation to the company, do you?

A. I do.

Q. And that is this same Omaha & Republican Valley Railroad Company?

A. Yes, sir. It is certainly to my interest to stand in well with the railroad company.

Q. Think you would have a kind of a feeling that if all other things were equal, if you could return the favor you would like to do it, would you?

A. Yes, sir.

Mr. Kendall challenges the juror for cause.

By the court:

Q. That is a general opinion or prejudice that way, is it? Just a general opinion in favor of the company?

A. Yes, sir, the same as I would have for any person else that has shown me a favor. That is all.

Q. Supposing it to have been a person or a railroad company, or what not, that person being a party to a suit such as we have here this morning, would past favors and any desire that you might have to do them a favor, have any bearing upon your consideration of the evidence in the case?

A. No, sir; decidedly no.

Q. Would it in any manner influence your verdict for or against either party?

A. No, sir.

Q. You could enter into it perfectly free from any bias in either direction?

A. Yes, sir.

Q. Laying that all aside and trying it entirely upon the evidence and the law?

A. Yes, sir.

Afterwards, and before the jury was completed, the plaintiff below renewed his challenge to Mr. Salter, and the record shows the following:

Court: Mr. Salter, is there any reason, or are you sensible of any reason why you should not sit upon this jury?

A. I am not, sir.

The court excuses Mr. Salter and the defendant excepts.

Court: I will allow each of you a peremptory challenge to any one that may be called in Mr. Salter's stead, and also allow the defendant to withdraw its waiver of the last peremptory challenge.

It is evident that the court erred in overruling the challenge in the first instance, and no doubt on reflection became convinced of that fact and hence sustained the challenge.

A fair trial before an impartial jury means one where the jurors are entirely indifferent between the parties. In *Curry v. State*, 4 Neb., 545, it was held that to justify the retention of a juror on the panel he must be entirely indifferent between the parties. It is said: "If he (the juror) express the least doubt of his ability to do so he should not, in the face of a challenge for cause, be retained. And even where by his formal answers the juror brings himself within the letter of the statutory qualification, if the court should discover the least symptom of prejudice or unfairness, or an evident desire to sit in the case, he should, in justice both to the state and the accused, be rejected."

This court, from the first, has held that jurors could accept no favors from either party, as the effect might, and probably would, be to affect its verdict. (*Ensign v. Harney*, 15 Neb., 330; *Vose v. Muller*, 23 Id., 171; *Johnson v. Greim*, 17 Id., 447.) It is very clear that the relations between the railway company and the juror were too

intimate to secure impartiality on the part of the juror named, and the court did not err in discharging him.

The juror W. B. Spangler, a former employe of the company, was also excused, which it is claimed is erroneous; and the same is true of the juror Jackson. He testifies:

Q. Mr. Jackson, does your family reside here?

A. No, sir.

Q. Where is your family?

A. Grand Island.

Q. How long has your family resided in Grand Island?

A. Seven or eight years. Eight years, I guess.

Q. Then you are over here temporarily running the hotel are you?

A. Yes, sir.

Q. Have you exercised the right of the ballot here?

A. No, sir; I do not vote.

Q. Where is your voting place?

A. Well, I don't know whether I would be a voter here or not. I did not try to vote.

Q. You were here for the temporary purpose of conducting the hotel?

A. Yes, sir.

Q. How long does your lease run for the hotel?

A. Until to-morrow night.

Q. Where are you going then?

A. I haven't hardly made up my mind where I shall go.

Q. Return to your family for the present?

A. For the present, yes, sir.

By Mr. Kelly:

Q. Do you consider yourself a resident of this county?

A. Well, I don't know whether I would be or not.

Q. I am asking you what you consider yourself?

A. Why, yes, sir; so long as I stay here, I suppose I am. They came around and assessed me the other day. Personal tax, I suppose they call it.

It is very clear that Mr. Jackson was not an elector of

Howard county and therefore the challenge was properly sustained. In addition to this, the excusing of a person called as a juror from serving on the jury where there is any doubt of his fairness or qualifications is not ground of error. (*Richards v. State*, 36 Neb., 18; *State v. Miller*, 29 Kan., 43; Maxw., Cr. Proc., 581.)

In the case cited from Kansas it is said: " We can hardly see how the court could commit substantial error by discharging any person from the jury, when twelve other good, lawful, and competent men could easily be had to serve on the jury. (*Stout v. Hyatt*, 13 Kan., 232; *Atchinson, T. & S. F. R. Co. v. Franklin*, 23 Id., 74.) There is an immense difference between discharging a juror and retaining him. To discharge him can seldom, if ever, do any harm, while to retain him, if his competency is doubtful, may do immense injury to one party or the other."

There was no error, therefore, in discharging these jurors as there is no complaint that a fair jury was not obtained.

There is no objection made to the instructions, so that the only remaining question is in regard to the evidence. There is testimony in the record that the engineer and fireman saw the plaintiff below on the track for at least seventy rods; that she was walking in the same direction that the train was going. There is also testimony that tends to show that her mind seemed to be absorbed; that the whistle was not sounded until within about a car's length, when the plaintiff below attempted to get off the track but was caught while attempting to do so, and sustained the injuries in question. There is also testimony that had the whistle been blown at the proper time to enable her to be apprised of the danger she could and in all probability would have left the track and the accident been avoided. In effect the issue is that although the plaintiff below was a trespasser on the railway track still the employes of the company could not inflict the injuries charged upon her

if by the exercise of ordinary care they would have been prevented. (2 Thompson, Neg., 1157; *Barker v. Savage,* 45 N. Y., 191, 194; *Brown v. Lynn,* 31 Pa. St., 510; *Northern C. R. Co. v. Price,* 29 Md., 420; *Locke v. First Division St. Paul & P. R. Co,* 15 Minn., 283; *Nelson v. Atlantic & P. R. Co.,* 68 Mo., 593; *O'Keefe v. Chicago, R. I. & P. R. Co.,* 32 Ia., 467; *Morris v. Chicago, B. & Q. R. Co.,* 45 Id., 29.) Compare *Lannen v. Albany Gas Light Co.,* 44 N. Y., 459, affirming 46 Barb. [N. Y.], 264. The rule is very clearly stated by Judge Thompson in his valuable work on Negligence, pp. 1105, 1157. In *McKean v. Burlington, C. R. & N. R. Co.,* 55 Ia., 192 [7 N. W. Rep., 505], it is said the rule is required by humanity and reason, citing *Morris v. Chicago, B. & Q. R. Co.,* 45 Ia., 29. To the same effect: *Brown v. Hannibal & St. J. R. Co.,* 50 Mo., 461; *Omaha H. R. Co. v. Doolittle,* 7 Neb., 481; *Burnett v. Burlington & M. R. R. Co.,* 16 Neb., 332 [20 N. W. Rep., 280]; *Cook v. Pickrel,* 20 Neb., 433 [30 N. W. Rep., 421]; *Union P. R. Co. v. Sue,* 25 Neb., 772 [41 N. W. Rep., 801]. Even if it be conceded that the plaintiff below was unlawfully on the track, and did not look back to see if a train was approaching, still there is testimony in the record from which the jury would be warranted in finding that, after the engineer became aware of the perilous condition of the plaintiff below, he could, by the exercise of ordinary care, have stopped the engine. This was proper to submit to the jury, and as it was fairly submitted there is no valid ground on which to set the verdict aside. The judgment is therefore

AFFIRMED.

THE other judges concur.