MARY E. HAYNES, APPELLEE, V. FARMERS & MERCHANTS STATE BANK OF WAHOO, APPELLANT.

FILED MARCH 28, 1929. No. 26458.

C. M. Skiles and J. H. Barry, for appellant.

Paul F. Good, Coufal & Shaw and McKillip & Barth, contra.

Heard before GOSS, C. J., GOOD, THOMPSON, EBERLY and DAY, JJ., and REDICK and SHEPHERD, District Judges.

SHEPHERD, District Judge.

Beauchamp and Winter, the former a salesman and the latter the president and manager of the Farmers & Merchants Bank of Wahoo, engaged in the automobile business, conducting the same in the name of E. K. Beauchamp. In the latter part of 1920 the business needed money and it was procured by getting Mrs. Haynes, who was Beauchamp's mother-in-law, to sign notes. She signed so many in the course of a short two years that on the 12th day of December, 1922, Winter, in whose bank said notes seem to have been congregated, persuaded her to sign a $20,000 mortgage to secure the same, together with new notes amounting to that sum. In May or June of 1925 the automobile business had gone to ruin and the bank was in a bad way. A new president and a new board of directors began to function for the bank and immediately importuned Mrs. Haynes for a deed whereby they might sell the farm at a private sale, pay the mortgage and render her the surplus. And this, by the assistance of Winter who had a great deal of influence over her, they were successful in securing.

On the 29th of August, 1925, Mrs. Haynes began this action in equity to cancel said notes and conveyances and to recover the land and its rents and profits. She declared that she signed and delivered the said notes and conveyances wholly without monetary consideration. She averred that she was inexperienced, weak of mind, altogether under the influence of Winter and Beauchamp, and that she was led to sign in all instances by false and fraudulent representations deceitfully made by them for the purpose of defrauding her. She alleged that these representations were to the effect that their automobile business was profitable; that Winter practically owned the bank, was worth more than $100,000 above his debts, and was a man of the highest integrity; that said bank was financially sound; that Beauchamp was earning more than $5,000 a year;

that her signing was sought merely to assist the bank in making a showing to satisfy the examiner, and that she would not be required to pay. And she alleged that they further told her at the time of making the described mortgage of $20,000 that she had previously signed obligations totalling $18,000, when in fact said obligations did not exceed the sum of $12,000.

All this was generally denied by the defendant, the Farmers & Merchants Bank of Wahoo, which answered that it had parted with every dollar of the claim which it held against her, and asserted that she was estopped to maintain to the contrary.

The decree of the district court was in Mrs. Haynes' favor, canceling the notes, deed and mortgage and awarding her a judgment against the defendant for $1,380 for rents and profits from the farm.

No doubt appellee was overreached, as the trial court found. The record so indicates unmistakably. Mrs. Haynes was little learned, inexperienced, old, easily influenced and possessed only of the mental capacity of a child of 14 years. She was not able to handle important business involving large sums of money or to withstand the importunities of men of affairs who professed to be her friends. The record also discloses facts and circumstances sufficient to show that all of the representations alleged as made by way of inducement and otherwise were actually made, and were false and designedly false. The woman was defrauded by a couple of rascals who secured money from the bank for their own purposes and bilked her out of her farm to make the bank whole.

It is insisted, however, by the appellant bank that it is not to be charged with the fraud in question, because, in the first place, a note given for the assistance of a bank in its difficulties with the bank examiner may not be avoided on the ground that an official of the bank who procured the same to be given promised the giver that it would not be collected, and because, in the second place, knowledge of frauds practiced by a bank official is not to

be imputed to the bank itself in case the note obtained thereby is for the personal profit of such official.

The first proposition is sustained by the holdings of this court in *Farmers Nat. Bank v. Ohman*, 112 Neb. 491. The second proposition is also generally accepted and has had recognition in this state, the reason being that banks act by their directors, and that a fraud perpetrated by an official for his own benefit will not ordinarily be disclosed by him to such directors or to the bank.

But the latter rule certainly has its limitations and exceptions. The presumption ought not to obtain in a case where the president who practices a fraud is the practical owner of the bank and the general manager of the same, and where its board of directors has committed to him complete control and direction of all of the business and affairs of the the institution, and he has habitually exercised the same. It would be purblind justice, indeed, to so hold if the proofs establish such a condition. Nor are we disposed to hold that such authority could only be delegated to such official by a formal and recorded action of the board. It is enough that the actual condition exists and is proved.

The evidence shows to the satisfaction of this court, as it evidently did to the trial court, that Winter was vested with just such power and authority in connection with the business of the Farmers & Merchants Bank of Wahoo, appellant herein. It follows, therefore, that his knowledge was the knowledge of the bank.

A party taking a promissory note, even before due and for a valuable consideration, will not be entitled to collect the same if it has been obtained by fraud and if he had knowledge of that fact at the time of such taking. This familiar doctrine, which does not require the citation of authorities, is sufficient to sustain the decree of the district court upon the facts found.

The new president and directors of the bank were not successful at first in obtaining the deed which they urged Mrs. Haynes to make. Upon the occasion of their first

visit for that purpose she desired to take time to consider and to obtain advice. It may be noted in passing that she had at first refused to sign the mortgage which was made December 12, 1922, upon the advice of her older son who had been present when she was then solicited so to do. A considerable time afterward said president and directors arranged with Winter to call upon her and to persuade her to sign the deed in question, making arrangements to visit her immediately upon the conclusion of his call. This they did, and then obtained from her the deed which they wanted, the consideration thereof being $20,000. Now, the true amount for which Mrs. Haynes had obligated herself, aside from the $20,000 worth of notes which she executed when the mortgage was taken, did not exceed the sum of about $13,000, as the books of the bank and the testimony of the witnesses show. Undoubtedly these directors must be charged with knowledge as to the real extent of her obligations, for they not only had such obligations in their possession in the bank, but also the bank records concerning the same. They knew absolutely that $1,000 of the $20,000 consideration recited in the mortgage and in the deed was in the form of a note which was turned over to Beauchamp. It seems clear to us that in taking this deed for $20,000 the new president and the directors, and therefore the bank itself, participated in the fraud which had been practiced by Beauchamp and Winter. Having knowingly taken said deed, whether it be considered as an absolute conveyance or as a mortgage, for a greater amount than the real indebtedness of Mrs. Haynes, they can hardly be heard to say that the bank is innocent in the transaction. By so doing they ratified the acts of Winter and participated with him in the fraud. Nor can they in law be charged with a lesser degree of turpitude than he. As he made the fraudulent representations to Mrs. Haynes knowingly and deceitfully for the purpose of defrauding her, so the bank must be considered to have acted. *Brucker v. Kairn,* 89 Neb. 274. Moreover, the bank did not surrender any por-

tion of the notes and obligations signed by Mrs. Haynes, not even when they secured the said deed from her. They retained all of the benefits secured by Winter, as well as by themselves, and ought in equity to be estopped from seeking to hold either the said obligations or the real estate in question.

In the case of *Buchanan v. Wilson*, 97 Neb. 369, this court said in the second paragraph of the syllabus: "The plaintiff, although not wholly insane, was shown to be mentally weak and a man of poor judgment, and in such case if the weak mental condition of the plaintiff enabled the defendant the better to take advantage of the plaintiff, and he did take advantage of him, and thereby fraudulently acquired the plaintiff's property for much less than its true value, the contract should be rescinded at the plaintiff's request, and plaintiff should recover his property; and it will be immaterial whether the plaintiff was wholly insane at the time the trade was made." The doctrine thus stated applies to this case with peculiar force. But it does not need; by both knowledge and participation the fraud practiced was the fraud of the bank, and it was enough to void the notes and conveyances in suit.

It is contended on the part of the bank that in placing the deed on record, together with a contract from the bank agreeing to pay her the surplus after applying the proceeds of the sale to the bank's claim, Mrs. Haynes ratified the deed and all of the transactions leading up to the same, and is estopped. But it does not appear that at the time of filing said instruments she was fully advised of all of the fraud that had been practiced upon her. Considering her mental weakness and considering also the fact that she was not so fully advised, the court is of the opinion that she did not ratify and was not estopped. In order to ratify a mortgage or other instrument procured by fraud, there must be an unequivocal act, with full knowledge of the fraud, confirming the lien. *Burnham v. Lawson*, 103 N. Y. Supp. 482; *Staley v. Housel*, 35 Neb. 160.

Although the bank is charged in the amended petition with the collection of farm rents amounting to $1,380, no testimony in regard to the same, or any portion of it, appears in the bill of exceptions. It is stated dehors the record that evidence upon the point was actually adduced, but that a mistake occurred whereby it was omitted from the bill. There being no evidence in the bill to support the judgment for such rents in the sum of $1,380, the decree of the district court must be modified in the respect indicated.

The judgment of the district court in so far as it awards judgment of $1,380 to plaintiff for rents is erroneous, in all other respects it is right. The judgment is hereby modified so as to deny plaintiff any recovery for rents and in all other respects the judgment is affirmed.

AFFIRMED AS MODIFIED.