JEFFERSON PARK REALTY CORPORATION *v.*
RIDGELY ET AL.

[No. 14,641. Filed March 17, 1934. Rehearing denied June 28, 1934.]

*Gavit, Hall, Smith & Gavit* and *Albert H. Gavit,* for appellant.

*Frederick Crumpacker, Edwin H. Friedrick,* and *Jay E. Darlington,* for appellees.

PER CURIAM—Appellee Ridgely commenced this action seeking to subject appellant's real estate to either an equitable lien or to the lien of an unrecorded mortgage. She had sold the property in question to one Bornstein and had taken back a purchase money mortgage which she claims he had induced her to release by fraud. Later Bornstein, with the joinder of others, formed appellant company and the land was conveyed to it for value by a third person who had in the meantime taken title. The trial court concluded that appellant was to be charged with knowledge of this conduct of Bornstein under the so-called "sole representative" doctrine but expressly found that appellant had purchased the land for value without notice of any claim by appellee Ridgely and that Bornstein had never communicated his knowledge to any member of appellant corporation.

The issues were formed upon appellee Ridgely's amended first paragraph of complaint and her second paragraph of complaint. The amended first paragraph of complaint alleged that she had sold real estate to one

Bornstein, taking back a purchase money mortgage; that Bornstein, on November 8, 1927, induced appellee Ridgely to release this mortgage by making fraudulent representations as to his personal solvency and worth which were relied upon by her, and the release executed. Later the real estate was conveyed to appellant. This paragraph further alleged that appellant had taken title with full knowledge of Bornstein's fraud and the relief sought was declaration and foreclosure of an equitable lien. The second paragraph of complaint contained similar allegations except that the relief sought was the foreclosure of the released mortgage as an unrecorded mortgage. Appellant demurred separately to each paragraph of complaint on the grounds that they did not state facts sufficient to constitute a cause of action and upon its demurrer being overruled and separate exceptions saved, it answered in three paragraphs, the first being a general denial, the second alleged that it was a bona fide purchaser for value and without any knowledge of the alleged fraud, and the third alleging matter in estoppel, that is, that it acquired the title and that thereupon it accepted a conveyance of said property and paid therefor by issuing common stock and second preferred stock to Bornstein's nominees and that the corporation put improvements thereon with the profits from an issue and sale of $550,000 of first preferred stock and that this action was not commenced until 1929, one and one half years after the transaction complained of. Appellee Ridgely replied in general denial to the second and third paragraphs of appellant's answer. Appellant filed a cross-complaint against Ridgely seeking to quiet its title to the real estate here involved which was answered by a general denial.

The issues were decided adversely to appellant and in favor of appellee Ridgely. The decree and judgment was as follows:

"It is thereupon ordered, adjudged and decreed that plaintiff is entitled to recover upon her second paragraph of complaint herein and that there is due plaintiff from Aron Bornstein the sum of Ninety-nine Hundred and Thirty ($9930) Dollars and Thirty-three (33) Cents plus Nine Hundred ($900) Dollars attorneys' fees and that payment thereof is secured by an unrecorded mortgage in favor of plaintiff and against all defendants upon the following described real estate situate in the City of Gary, Lake County, Indiana, to wit: Lot twenty-two in Block seventy-eight in Gary Land Company's First Subdivision in Gary and that said unrecorded mortgage should be and the same hereby is foreclosed in favor of plaintiff and against all defendants upon said real estate and that said real estate be, and the same hereby is ordered sold by the Sheriff of Lake County, Indiana, without relief from valuation and appraisement laws, to make and satisfy said sum hereinabove adjudged due plaintiff and that at said sale all right, title, interest and lien of the defendants in and to said real estate shall be forever cut off, barred and foreclosed, saving only unto the defendants their statutory right to redeem from said sale within one year from the date thereof;

"It is further ordered, adjudged and decreed that the proceeds arising from said sale shall be applied by said sheriff as follows:

"1st. To the payment of the costs and accruing costs of this action;

"2nd. To the payment of the sums herein adjudged due plaintiff together with attorneys' fees and interest from this date at the rate of six per cent per annum;

"3rd. The overplus, if any then remain, shall be paid into the office of the clerk of this court for the use and benefit of any parties found entitled thereto."

The errors relied upon for reversal are those specified in appellant's assignment of errors, to wit:

· 1. The court erred in overruling appellant's demurrer to appellee Bessie M. Ridgely's amended first paragraph of complaint.

2. The court erred in overruling appellant's demurrer to appellee Ridgely's second paragraph of complaint.

3. The court erred in its first conclusion of law.

4. The court erred in its second conclusion of law.

5. The court erred in its third conclusion of law.

6. The court erred in its fourth conclusion of law.

7. The court erred in its fifth conclusion of law.

8. The court erred in its sixth conclusion of law.

9. The court erred in its seventh conclusion of law.

10. The court erred in its eighth conclusion of law.

11. The court erred in its ninth conclusion of law.

It will be observed that there is no assignment of error questioning the correctness of the finding of facts.

The appellant has not presented for our determination any question as to the sufficiency of the complaint and we do not deem it necessary to set it out in full in this opinion. Sufficient reference to its allegations and to the other pleadings will be made for an understanding of the issues. In this opinion when the name Bornstein is used it shall be understood to refer to Aron Bornstein unless otherwise indicated. Where the word appellee is used it shall refer to Bessie M. Ridgely unless otherwise indicated.

The facts as found are not in dispute. They are somewhat simple but the application of the law to them is not without difficulty. The finding covers thirty-two printed pages of the appellant's brief and consists of twenty-two separate findings. To set out the finding of facts verbatim would unduly extend this opinion. We believe the controlling facts as found by the court to be substantially as follows: That on and prior to May 12, 1927, the appellee owned Lot number 22 in block number 78 in the Gary Land Company's First Subdivision in the City of Gary, Lake County, Indiana, which on said day, together with her husband, she conveyed by warranty deed to Aron Bornstein for the agreed price of $11,500;

of this sum Bornstein paid her $3,000.00 in cash and executed his note to the appellee for $8,500.00 secured by a purchase money mortgage on the real estate conveyed, which said mortgage was duly recorded in the office of the recorder of said Lake County on the 14th day of May, 1927; that all of Bornstein's negotiations for the purchase of said real estate were with Claude V. Ridgely, who was an attorney and who acted as the agent and representative of his wife, the appellee; that for many years before said date the appellee and her said husband and the said Bornstein had lived in the City of Gary, the said Claude V. Ridgely practicing law and Bornstein engaging in the wholesale fruit and vegetable business and buying and improving real estate in said city upon an extensive scale and that in many of his real estate transactions he had employed said Claude V. Ridgely as his attorney and had frequently consulted him in such capacity and that in November, 1927, the said Ridgely had confidence in said Bornstein and believed in his honesty, truthfulness, and integrity; that at or about the time Bornstein purchased appellee's lot, he acquired four lots adjacent thereto making a large building site upon which he planned to and did subsequently erect a large eight-story apartment building known as the Ambassador Apartments; that shortly prior to May 28, 1927, said Bornstein obtained a loan of fifty thousand dollars from one Kelley, Glover & Vale Realty Company to be used in the construction of said building, which loan was secured by a warranty deed from Bornstein and his wife covering all five of said lots. The deed was dated May 28, 1927, and duly recorded in the records of Lake County, Indiana, on the 3rd day of June, 1927; that said deed was in fact a mortgage and that at the time of taking said security for said loan said Kelley, Glover & Vale Realty Company had no actual knowledge of the existence of appellee's mortgage though

the same was actually of record as above set out; that Kelley, Glover & Vale Realty Company held the said record title to said real estate until November 23, 1927, when, at Bornstein's request, they conveyed it to the appellant under the circumstances hereinafter mentioned; that on October 14, 1927, Bornstein submitted a written proposal to Meyer-Kiser Bank of Indianapolis, by which he proposed that a corporation be formed with common stock and first and second preferred stock in certain amounts; that the real estate above referred to, being said five lots, be conveyed to the corporation, which was to proceed to erect the apartment building. The proposal specified the amount of stock of the classes indicated, the dividend rates on the preferred stock, its periods of maturities, the conditions under which the building was to be erected and the preferred stock issued. The proposal called for insurance on the building and life insurance upon the life of Bornstein to protect the issue of first preferred stock. Provision was made for a commission on the first preferred stock to Meyer-Kiser Bank, for the guaranty by Bornstein of the obligations, both dividend and principal, of the first preferred, and other provisions relating to the manner in which the building should be erected and the stock issued and sold. The proposal was accepted by Meyer-Kiser Bank on the 14th day of October, 1927, and on the 17th day of November following a general contract was entered into between the said Bornstein and Meyer-Kiser Bank embodying the terms of the proposal of October 14; that the corporation provided for in said proposal of Bornstein and in the said contract between him and said Meyer-Kiser Bank was duly organized in November, 1927, it being the appellant herein, with an authorized capital stock of one million dollars, consisting of ten thousand shares of the par value of $100.00 each, divided into thirty-five hundred shares of common stock, five thou-

sand five hundred shares of first preferred stock and one thousand shares of second preferred stock; that Bornstein in accordance with said contract caused the said five lots to be conveyed to said corporation by the said deed of Kelley, Glover and Vale Realty Company heretofore mentioned; that partly in consideration of said conveyance which Bornstein's said contract provided was to be a conveyance of the title to said real estate by warranty deed free from all liens and encumbrances except current taxes and municipal assessments not yet delinquent, and partly by reason of the other promises in said contract to be kept by said Bornstein and particularly his promises in relation to said building project, the said Bornstein was to be the equitable owner of the said common stock, but that a majority of said common stock should be issued in the name of said bank as trustee who was to remain the record holder thereof as long as any of the corporation's first preferred stock remained outstanding. (The said first and second preferred stock was to be redeemed at certain specified times and was also to carry an option for redemption sooner); that when the last of the said corporation's obligations to its preferred stockholders had been performed the said bank as such trustee was to cause said common stock to be transferred to Bornstein or to the order of his assigns. The said contract contained numerous obligations to be kept by Bornstein wherein he personally guaranteed that the corporation would fully carry out all its obligations to the first preferred stockholders; that he would procure, pay for, and keep in force $100,000.00 of life insurance upon his life for the use and benefit of said first preferred stockholders in the event of his death prior to the redemption of a like amount of said stock, which insurance was to be reassigned to Bornstein upon the redemption of the one hundred thousand dollars of said first preferred stock;

that subject to the performance by Bornstein of all of his said obligations to be performed by him as contained in said contract the Meyer-Kiser Bank was to purchase (and it did purchase) all of the five hundred fifty thousand dollars par value of said first preferred stock for the sum of four hundred ninety-five thousand dollars, the proceeds to be held on deposit by said bank and paid out in the manner provided in said contract. (There is no question made herein as to the fact that said money was used in the manner provided in the contract.) Bornstein undertook to and did cause said corporation to adopt and approve said contract insofar as the provisions thereof related to and were to bind said corporation. This was done on the 23rd day of November, 1927. The incorporators of said corporation were said Bornstein, his wife, Ida J. Bornstein, and Anton J. Wichmann of Indianapolis; they each signed waivers of notice of the first meeting of said incorporators to be held November 23, 1927, and the corporate minutes show all present at such meeting but in fact no one was present except said Aron Bornstein and he purported to transact the business of said meeting and procured the preparation of the minutes and their extension in the corporate record. They were subsequently signed by Ida J. Bornstein as secretary. The two Bornsteins and Wichmann were elected directors and by-laws were adopted. The said contract between Bornstein and the Meyer-Kiser Bank was submitted to the meeting and the directors were ordered to approve and ratify it. The said deed from Kelley, Glover and Vale Realty Company conveying said five lots to the corporation was submitted to the meeting, and a resolution adopted accepting it. Immediately after said meeting of the incorporators and on the same date and at the same place the directors purported to hold a meeting pursuant to waiver of notice signed by all three of them. Only Bornstein, however,

was present and he transacted such business as took place, which included his election as president and treasurer, the election of his wife as secretary, and Wichmann as vice-president. At this meeting Bornstein submitted a written proposal to the said corporation that in consideration of the issuance to his order of all of the corporation's common and second preferred stock, less qualifying directors' shares, and of the use of the proceeds of the sale of the corporation's first preferred stock, he would cause to be conveyed to the corporation the fee simple title to said five lots and to erect thereon an eight-story apartment building, to assign to the Meyer-Kiser Bank of Indianapolis, Indiana, three shares of said common stock as fully paid and non-assessable, and to guarantee payment of both principal and dividends upon the corporation's first preferred stock. This proposal was, at said meeting, accepted and the deed to said real estate was received and accepted. (This was the Kelley, Glover and Vale Realty Company's said deed to the corporation heretofore mentioned.) In pursuance to the said contract between Bornstein and said bank and in carrying out the resolutions of the corporation there were issued to said Bornstein three thousand three hundred ninety-four shares of said common stock in the name of said bank as trustee, who gave him a certificate reciting that he was the beneficial owner thereof. There was also issued to him $60,000.00 of par value of the second preferred stock. He thereupon assigned both his said certificate of beneficial interest and said certificate for said second preferred stock issued to him, to Kelley, Glover and Vale Realty Company as collateral security for the loan from it to him of $60,000.00, which consisted of said original $50,000.00 heretofore mentioned and an additional advance of $10,000.00. The exclusive voting rights in the corporation formed were in the common stock excepting in case the corporation should be in default

in the performance of any of its obligations to the first preferred stockholders, in which event, and so long as any such default continued, the first preferred stockholders were to have voting rights in all respects equal, share for share, with the common stockholders.

In the meantime on or about November 6, 1927, and while the transactions above mentioned between Bornstein and the said bank were pending, Bornstein approached the appellee's husband, the said Claude V. Ridgely, and requested him as the agent of the appellee to release said purchase money mortgage of $8,500.00 given May 12, 1927, as heretofore mentioned, and to hold the note, unsecured by the said mortgage, for the payment of the debt and to extend its maturity until the final completion of said building. Both requests were granted on the 8th day of November, 1927, and within a few days thereafter the said release, which recited payment in full of said mortgage, was duly recorded in the recorder's office of Lake County, Indiana. In view of the importance of what took place between the said Claude V. Ridgely as the agent of the appellee and Bornstein at the time the said extension of time was granted and said release of mortgage executed by the appellee, we deem it best to quote a part of finding number 7 and all of 8 and 9 as follows:

"In order to induce the said Ridgely and the plaintiff to release the mortgage Bornstein stated to said Ridgely at that time that he was a man of great wealth, that he was worth seven hundred and fifty thousand dollars net above his indebtedness, and he further stated that he was the owner of the lots, heretofore described, comprising the building site upon which the apartments were then being erected, including the lot that plaintiff conveyed to him in the preceding May. He also stated that at that time, November 6, 1927, he had paid out of his own funds toward the construction of said apartment

building three hundred and fifty thousand dollars and that at that time his equity in said building was worth that sum. He further stated that at that time he had procured a mortgage loan on the real estate for five hundred and fifty thousand dollars, which loan would be sufficient to complete the construction of the building and pay therefor in full, except such cash money as he, Bornstein, had then advanced for its construction. He further stated that the mortgage loan company making the loan would only disburse the same as the building progressed to completion and would at all times retain until final completion of the building 20% of the loan to secure the completion of the building and payment therefor. He further stated to said Ridgely that he was then earning and had been earning for a long period of years, in his fruit and vegetable business, a net profit of from twenty-five to thirty-five thousand dollars a year, and that he could, out of the profits of said business, if necessary, pay the interest on the mortgage loan he had procured on said apartment building."

"Eighth: At the time Bornstein made the representation set forth in Finding No. 7 he was not worth seven hundred and fifty thousand dollars over and above his liabilities, but on the contrary was insolvent. He owned at said time various parcels of real estate in the City of Gary aside from his interest in the Ambassador Apartments site, all of which real estate was encumbered with mortgages. The total value of his real estate was then approximately $600,000, against which were mortgages amounting to $475,000. He was then indebted, on unsecured obligations, to the Mid City Building, Savings & Loan Association, the Mid City State Bank and the Mid City Realty Company, all of Gary, in the sum of $180,000. He was indebted to Kelley, Glover and Vale in the sum of $60,000, to the plaintiff in the sum of $8,500, and to various other individuals, on unsecured notes and obli-

gations, in the sum of $25,000. His equities in his real real estate holdings were approximately $125,000, and his whole unsecured indebtedness exceeded $250,000. At the time said Bornstein made said statements to said Ridgely he was not the owner of the legal title to the lot conveyed to him by the plaintiff and the adjacent lots comprising the site of said apartment building, but he had in fact conveyed the same to Kelley, Glover & Vale, as heretofore found. At the time he had made said statements he did not have $350,000 of his own funds in said apartment building, but only $240,000 and his equity in said building at said time was not worth $350,000, but on the contrary not to exceed two hundred forty thousand to three hundred thousand dollars. When he made said statements he had not procured a mortgage loan upon said building, but had entered into negotiations for the sale of first preferred stock in the defendant company, the Jefferson Park Realty Corporation, for the purpose of raising funds to complete the construction of the building, as hereinafter more particularly found. At the time said statements were made said Bornstein was not making from twenty-five to thirty-five thousand dollars a year net profit from his fruit and vegetable business, but on the contrary was not making to exceed six thousand dollars a year net profit therefrom."

"Ninth: As a result of said statements so made by the said Bornstein to the said Claude V. Ridgely plaintiff was induced to and did, on the 8th day of November, 1927, execute a release of said purchase money mortgage, which release verified payment in full of said mortgage and was therafter and within a few days regularly recorded in the recorder's office of Lake County, Indiana. Neither the plaintiff nor her said agent knew the facts concerning said statements and representations of the said Bornstein at the time said statement and representations were made. Because of the relation which had

existed between the said Bornstein and the said Claude V. Ridgely and the latter's belief in the integrity and truthfulness of the said Bornstein, he, the said Ridgely, believed said statements and representations and relied upon the same, and the plaintiff as his principal was thereby induced to and did execute said release. Each and all of said representations were false in the particulars heretofore found and were made by said Bornstein with knowledge of their falsity or in reckless disregard of their truth for the purpose of inducing the plaintiff to release said mortgage. Neither the plaintiff nor her said agent knew that said statements or representations, or any of them, were false until after the death of the said Bornstein, which occurred on the 26th day of January, 1929. Said Ridgely made no effort to ascertain the truth or falsity of said representations but could, had he so chosen and with the means then at hand, have discovered their truth or falsity."

We quote also a part of the 16th and 17th findings as follows: "Sixteenth: Ida J. Bornstein was an incorporator and secretary of the defendant corporation. She and Aron had six children and Mrs. Bornstein had the responsibility of looking after this family. She signed the Articles of Incorporation, waivers of corporate meetings and minutes of meetings and the stock certificates as secretary, at the instance and direction of her husband. She attended no stockholders' or directors' meetings and exercised no discretion in its business and in each instance, where her signature appears on the papers, it was placed there when her husband brought the papers of the corporation to her and requested her to sign them. She did not keep the seal or corporate records of the company. She paid nothing for her qualifying share of stock. What Mrs. Bornstein did so far as the corporation was concerned she did without comprehensive knowledge and at the direction of her husband. She did

not know Anton J. Wichmann was cashier of the Meyer-Kiser Bank of Indianapolis and its nominee on the Board of Directors of the defendant company. He never was in Gary and did not attend any of the stockholders' or directors' meetings of the defendant company. He did not pay for his qualifying share of stock, exercised no discretion with respect thereto, and took no part in its business."

"Seventeenth: Bornstein alone transacted the business of the company. He alone made its decisions, acted for it, and was in fact its sole active representative. The building was completed and put in operation in July, 1928, and from that time until Bornstein's death on January, 1929, he alone managed the property, leasing it, collecting rents and paying expenses of operation. The by-laws of the corporation provided that the directors should designate a bank where the treasurer was to deposit the funds of the corporation and disburse them by check but notwithstanding this Bornstein deposited the moneys collected by him from the building in his own name, and in his own account, at banks where he transacted his personal business, and disbursed said funds by his own personal checks. No ledger, daily entry books, cash books or entries of any kind showing receipts and disbursements from the property prior to Bornstein's death were kept by him as president or treasurer, or otherwise, or required to be kept by him by the Board of Directors. The corporation purported to hold its annual meeting in December, 1928. Nothing was done except the re-election of the old board of directors. Neither Mrs. Bornstein nor Wichmann were present and Bornstein alone purported to hold the meeting and procured the extension of minutes in the corporate records to show that the annual meeting was held with the incorporators and directors present. In all respects, except as heretofore found, from the time of the incor-

poration of the company until his death Bornstein transacted its business, made its decisions and represented it without the counsel, aid, advice or assistance of any other person. Ida J. Bornstein and Anton J. Wichmann knew that Aron Bornstein so acted and consented thereto."

It is further found that Bornstein in December, 1927, and in June, 1928, and in December, 1928, paid the appellee the accrued interest on said note and that in the fall of 1928 Claude V. Ridgely notified him that he desired the principal thereof paid which Bornstein agreed to do and that two days before his death Bornstein showed Ridgely securities upon which he stated he was borrowing money for that purpose. He had agreed to have paid the note on the day he died; that some six weeks or two months after Bornstein's death Ridgely for the first time notified the appellant of the existence and non-payment of said note and made demand for its payment; that no officer or director of the appellant company had actual and personal knowledge or notice that said note of the appellee was unpaid until after the death of Bornstein in January, 1929, except such notice as was possessed by Bornstein; that no lien was claimed by appellee against the appellant's real estate on account of said indebtedness until after Bornstein's death; that the income from said building of appellant is not sufficient to pay the dividends upon its first preferred stock; that the appellant was a purchaser for value of said lot sold by the appellee and the adjoining lots without notice or knowledge that the appellee was asserting or would thereafter assert any claim therein or thereto of any kind or character and that neither the appellee nor her agent had anything to do with the formation of the appellant corporation, or the negotiations and transactions by which the Meyer-Kiser Bank purchased said first preferred stock,

neither did she or her agent know that the appellant corporation had been formed or that said bank had purchased said stock or had any interest in said appellant corporation until after the death of said Bornstein. It is also found that the said bank, after its acquisition of said first preferred stock sold the entire issue thereof to various bona fide purchasers thereof for value but has since re-acquired and now owns twenty-three shares thereof.

The record discloses that the appellee, The Meyer-Kiser Bank of Indianapolis, Indiana, was, by its petition to intervene, permitted to intervene as a party defendant below. It refused to join in the appeal and has been made an appellee herein upon proper notice.

It is to be noted that the appellant in its brief under the heading of propositions, points and authorities has discussed only alleged errors numbered 3, 4, 5, 6, 9, and 10 of its assignment of error. These relate respectively to the first, second, third, fourth, seventh, and eighth conclusions of law. The other alleged errors are therefor waived. The fifth, sixth, and ninth conclusions of law which thus are unchallenged are as follows:

"5th: The Meyer-Kiser Bank is not a lender of money or a creditor in any other sense and its legal status is that of a holder of preferred stock in the Jefferson Park Realty Corporation."

"6th: The Meyer-Kiser Bank has no status independent of the Jefferson Park Realty Corporation in this transaction."

"9th: All rights of the Meyer-Kiser Bank as intervenor herein are junior and subservient to the plaintiff's rights."

The appellant predicates reversible error upon each of the following conclusions of law to wit: "1st. Bornstein's statements and conduct, relied and acted upon

by plaintiff, as set forth in the special finding of facts, constitute actionable fraud. 2nd. Bornstein's interests and the interests of the Jefferson Park Realty Corporation, in all things pertaining to the transaction, were one and the same and in no sense adverse. 3rd. Bornstein's knowledge of his fraud was the knowledge of the Jefferson Park Realty Corporation. 4th. The Jefferson Park Realty Corporation is not an innocent purchaser for value. 7th. That there is due the plaintiff upon the note sued upon the sum of $9,930.33, plus $900 attorney's fees. 8th. The plaintiff is entitled to disregard the release of mortgage procured through Bornstein's fraud and foreclose her mortgage as an unrecorded mortgage of which the defendant, Jefferson Park Realty Corporation, had notice."

The conclusions of law challenged by the appellant are in effect that Bornstein's statements and conduct relied and acted upon by the appellee as set forth in the special finding of facts constitute actionable fraud and that his interests and the interests of the appellant corporation in all things relating to the transaction that is the subject of this litigation were one and the same and not in any sense adverse and that his knowledge of his fraud was the knowledge of the appellant and that it, therefore, was not an innocent purchaser for value as against the appellee and that by reason thereof the appellee is entitled to disregard the release of mortgage procured through Bornstein's fraud and to foreclose her said mortgage as an unrecorded mortgage of which the appellant had notice.

In these conclusions we fully concur. The facts found show that Bornstein was certainly the sole representative of the appellant corporation in all matters relating to the transaction that is the subject of the litigation in the instant case and that his fraud was the appellant's fraud; that it was to his

interest as well as to the interest of the appellant to have the mortgage of the appellee defeated and that in respect to the status of the appellee's mortgage, Bornstein's interests were in no sense adverse to the appellant's. In order to sell its first preferred stock issue to the Meyer-Kiser Bank the appellant was required, under the said contract between Bornstein and said bank, which contract the appellant adopted and approved, to have an unincumbered title in fee simple to the lot of the appellee, subject only to current taxes and municipal assessments not yet delinquent. Bornstein was the owner of all of the common stock of the appellant corporation except a negligible amount, and he was to be the sole loser if it failed and practically the sole beneficiary if it succeeded, the preferred stockholders to receive nothing save a return of their money plus interest and premiums. Under all of these circumstances it is difficult to see how Bornstein's interest could be adverse to the appellant's in anything concerning the Ridgely transaction. The appellant is in no position to assert that although Bornstein acted fraudulently the appellee was not justified in relying upon his representations. His acts were in legal effect the acts of the appellant. The principle of law underlying and to a large extent controlling the instant case is stated by Thompson in his work on corporations (Thompson on Corporations 3rd Ed. Sec. 1777) as follows: "An exception to the rule that a corporation is not imputed with the knowledge of an agent in matters in which he has a personal interest occurs where he is the sole representative of the corporation. The rule here is that, notwithstanding the agent is personally interested, if he is the sole representative in the transaction, and is in effect the alter ego, notice to him is imputable to the principal."

What we have heretofore said disposes, as we think,

of all of the real contentions of the appellant and renders it unnecessary to discuss each of the challenged conclusions of law separately.

In reaching the above conclusions the following authorities have also been helpful. We do not deem it necessary to review them, but cite them merely. *Haynes* v. *Farmers & Merchants' State Bank of Wahoo, et al.* (1929), (Neb.), 224 N. W. 316; *National Bank of San Mateo* v. *Whitney* (1919), (Cal.), 180 Pac. 845; *National Bank of Commerce of Pierre* v. *Feeney* (1897), 9 S. Dak. 550, 70 N. W. 874; *Mechem on Agency* (2nd Ed.) Sec. 1813 *et seq; Curtis, Collins & Holbrook Co.* v. *United States* (1923), 67 Law Ed. 956; *State Bank of Pamplin* v. *Payne* (1931), (Va.), 159 S. E. 163; *J. J. McCaskill* v. *U. S.* (1910), 216 U. S. 504, 54 Law Ed. 590.

We have found no reversible error. The judgment is affirmed.